UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MAURICIO CRISTANCHO and IDALI MELGAR | |
| v. | CIVIL ACTION NO. 3:24-CV-00110 |
| SWBC MORTGAGE CORPORATION, CENLAR FEDERAL SAVINGS BANK, and ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC | |

# Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment

Plaintiffs MAURICIO CRISTANCHO and IDALI MELGAR ("Plaintiffs")

submit this Response in Opposition to Defendants SWBC MORTGAGE

CORPORATION ("SWBC") and CENLAR, FSB's ("Cenlar") (collectively,

"Defendants") Motion for Summary Judgment.

## I.    Introduction

1.    Defendants' Motion asks this Court to strip Plaintiffs of their

home—and all legal recourse—based on a one-sided account of facts that are

sharply disputed, and on legal arguments that misstate or oversimplify the

applicable standards.

2.      This case is, at its core, about a servicer that made it impossible for its borrowers to resolve their default. Defendants provided conflicting instructions, misplaced Plaintiffs' submitted documents, misrepresented that loss mitigation options would remain available during an appeal process, and then denied Plaintiffs assistance they were eligible to receive—all while holding Plaintiffs' homestead as security and advancing toward a foreclosure Defendants themselves caused. Defendants now ask this Court to immunize that conduct through summary judgment. The law does not permit that result.

3.      Summary judgment is appropriate only where there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, genuine disputes exist regarding: (1) whether Defendants' misrepresentations and procedural failures caused or contributed to Plaintiffs' inability to complete the Partial Claim process; (2) whether Defendants breached independent contractual and statutory duties owed to Plaintiffs; (3) whether Defendants' communications during the loss mitigation process constituted actionable fraud and TDCA violations; and (4) whether the tender requirement applies to Plaintiffs' damages claims. Summary judgment must be denied.

## II.    Objections to Defendants' Summary Judgment Evidence

4.    Defendants rely exclusively on the *Declaration of Alex D. Crossman* and seven attached exhibits as their summary judgment evidence. Plaintiffs object to portions of that evidence as follows.

## A. Objection to the Crossman Declaration: Lack of Personal Knowledge (Fed. R. Evid. 602; Fed. R. Civ. P. 56(c)(4)).

5.    Federal Rule of Civil Procedure 56(c)(4) requires that a declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Federal Rule of Evidence 602 similarly limits witness testimony to matters within the witness's personal knowledge.

6.    Alex D. Crossman identifies himself solely as "Vice President Document Execution" for Cenlar FSB. He does not state that he personally participated in, or has direct knowledge of, the specific communications with Plaintiffs regarding their loss mitigation applications, the instructions given to Plaintiffs during phone calls, the misplacement of Plaintiffs' modification paperwork, or the internal decision-making processes that led to the denial of the partial claim and loan modifications. To the extent the Crossman Declaration

purports to characterize those events, his statements are conclusory and lack demonstrated personal knowledge. Plaintiffs object to those portions and request that the Court disregard them. *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 530 (5th Cir. 2005).

## B. Objection to Exhibits A-3 Through A-7: Incomplete Foundation for Business Records (Fed. R. Evid. 803(6)).

7.      Defendants offer Exhibits A-3 through A-7 through the Crossman declaration as purported business records under Federal Rule of Evidence 803(6). To qualify as business records, the proponent must establish through a qualified witness that the records were: (1) made at or near the time of the events recorded; (2) by someone with knowledge; (3) kept in the course of a regularly conducted activity; (4) made as a regular practice; and (5) not untrustworthy. Fed. R. Evid. 803(6). The Crossman declaration provides only bare authentication—stating each exhibit is a "true and correct copy" of a document "sent to Plaintiffs"—without establishing the specific foundational requirements of Rule 803(6). Plaintiffs object to the use of these exhibits for the truth of their contents and reserve the right to challenge their admissibility at trial.

## C. Objection to Crossman Declaration ¶ 12 and Exhibit A-7: Inadmissible Lay Opinion (Fed. R. Evid. 701; 602).

8.      Defendants rely on the Crossman Declaration to argue Plaintiffs have "demonstrated no intention or ability to bring this Loan current." This is an improper lay opinion about Plaintiffs' subjective intent and financial condition—matters beyond Mr. Crossman's personal knowledge and not appropriate subjects of lay opinion under Rule 701. Plaintiffs object and request the Court disregard this characterization and the inferences Defendants ask the Court to draw from it.

## D. Objection to Defendants' Characterization of Facts as "Undisputed": Fed. R. Civ. P. 56(c)(1).

9.      Defendants' "Undisputed Facts" section omits: (1) SWBC's initial representation that a phone interview alone was sufficient, later reversed; (2) SWBC's admission that Plaintiffs' paperwork was misplaced; (3) the express written representation in the February 14, 2022 letter that the Partial Claim would remain available during appeal; and (4) SWBC's denial of the Partial Claim before the appeal was resolved. *See* Cristancho Decl. ¶¶ 5–14 attached as Exhibit 1; Melgar Decl. ¶¶ 5–11 attached as Exhibit 2. These are material

disputed facts that Defendants cannot simply omit and label the remainder "undisputed." Fed. R. Civ. P. 56(c)(1).

### III.  Plaintiffs' response to Defendants' statement of facts and disputed material facts

10.     Defendants' recitation of facts is incomplete and misleading. Plaintiffs respond to each material point and identify the genuine disputes that preclude summary judgment.

### A. The Loan and Forbearance (Undisputed)

11.     Plaintiffs do not dispute that they executed a *Note and Deed of Trust* in favor of SWBC on November 22, 2019, for the property located at 1725 Coral Cliff Dr., Dickinson, Texas 77539 (the "Property"), or that Cenlar began servicing the loan in 2019. Plaintiffs further do not dispute that a COVID-19 forbearance was granted beginning in June 2020.

### B. The Loss Mitigation Process (Disputed)

12.     Defendants portray the loss mitigation process as straightforward and Plaintiffs' non-execution of the Partial Claim documents as a simple failure to perform. This characterization is disputed and incomplete.

13.     Beginning in 2021, Plaintiffs made repeated efforts to contact SWBC and obtain clarity on their loss mitigation options. Plaintiffs were subjected to

multiple contradictory instructions: they were told in one interview that a written submission was required; in subsequent interviews they were told oral submission was sufficient. *See* Plaintiffs' Original Petition ¶ 17 (Doc. 1-1). After Plaintiffs submitted documents to comply, SWBC informed them that their modification form had been "misplaced in their system." *Id.* ¶ 18.

14.    On February 14, 2022, SWBC offered Plaintiffs the COVID-19 Recovery Standalone Partial Claim (the "Partial Claim")—but simultaneously declined to offer the COVID-19 Advanced Loan Modification. Critically, the February 14, 2022 letter—already in the record as Defendants' own Exhibit A-3— contains an express "Right to Appeal" section stating: "If you elect to appeal, you do not have to accept this offer until resolution of the appeal." *See* Defs.' Ex. A-3 at 2 (emphasis added). This written representation is the cornerstone of Plaintiffs' claims: they were expressly told the Partial Claim would remain available while they pursued an appeal.

15.    Plaintiffs timely exercised their right to appeal on March 10, 2022, requesting the COVID-19 Advanced Loan Modification instead. *See* Ex. 4 (Plaintiffs' March 10, 2022 Appeal Letter); Cristancho Decl. ¶ 12; Melgar Decl. ¶ 9. Yet SWBC denied the Partial Claim on March 8, 2022—two days before

Plaintiffs' appeal letter was even received, and before the appeal was resolved. *See* Defs.' Ex. A-5 (Partial Claim Denial Letter). The appeal itself was not denied until April 4, 2022. *See* Defs.' Ex. A-6 (Appeal Denial Letter).

16.     This sequence reveals a direct contradiction in Defendants' own exhibit set: SWBC's written offer told Plaintiffs the Partial Claim would remain open during appeal, yet SWBC denied the Partial Claim before the appeal concluded. Whether that denial was improper, and whether it—together with Defendants' conflicting instructions—caused Plaintiffs' inability to timely execute the Partial Claim documents, is a genuine dispute of material fact that cannot be resolved on summary judgment.

## C. The Second Loan Modification Application and HAF (Disputed in Part)

17.     Plaintiffs do not dispute that a second loan modification application was submitted in September 2022 and denied in December 2022. However, Defendants' characterization of the HAF denial as supporting their position is disputed.

18.      The HAF denial in this record did not result from a finding that Plaintiffs were ineligible for loss mitigation from Defendants. Rather, the TXHAF denial letter—Exhibit A-3 to Plaintiffs' Original Petition—states the denial reason

as: "AN-Loan Servicer – Not Responding," and explains: "Your application has been denied because your loan servicer has not responded to the TXHAF program's request for mortgage information." This is a servicer-side failure code under the TXHAF program guidelines, not a determination about Plaintiffs' underlying eligibility for a loan modification. The TXHAF program's own published denial reason categories distinguish between borrower-side ineligibility and servicer non-participation—the denial here falls in the latter category. *See* Pet. Ex. A-3.

19.    Defendants now claim they "provided the information required by Texas HAF." Crossman Decl. ¶ 2. That assertion directly contradicts the TXHAF denial letter. This is a genuine factual dispute that precludes summary judgment and, if anything, supports Plaintiffs' claims that Defendants frustrated every avenue Plaintiffs pursued to resolve their default.

## D. Tender (Disputed)

20.    Defendants argue Plaintiffs have not tendered the amounts due and thus cannot obtain relief in this suit. This argument is legally incorrect as applied to Plaintiffs' damages claims, and even as to equitable relief, fails where the inability to tender was caused by Defendants' own conduct.

21.     The tender requirement applies to claims for equitable relief to enjoin or set aside a foreclosure sale—not to claims for damages arising from a servicer's misconduct. Every case Defendants cite for the tender rule involves a plaintiff seeking to enjoin or unwind a foreclosure sale. *See Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N Prop Invests., LLC*, 481 S.W.3d 336, 349 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (injunction context); *Austin v. Mitchell*, No. 05-18-00052-CV, 2018 WL 2949443 (Tex. App.—Dallas June 13, 2018) (same); *BAPA Brooklyn 2004, LLC v. Twiehaus Revocable Living Tr.*, 2022 WL 2526975 (Tex. App.—Dallas July 7, 2022) (same). None of these cases holds that a tender requirement bars statutory damages claims under the FDCPA or TDCA, actual damages for fraud, or breach of contract damages—all of which Plaintiffs assert here. The tender rule is inapplicable to Plaintiffs' primary damages claims.

## IV. Plaintiff's Summary Judgment Evidence

22.     In support of this Response, Plaintiffs rely upon and incorporate the following evidence, filed herewith:

**Exhibit 1 – Declaration of Mauricio Cristancho**
**Exhibit 2 – Declaration of Idali Melgar**
**Exhibit 3 – SWBC February 14, 2022 Partial Claim Approval Letter**
**Exhibit 4 – Plaintiffs' March 10, 2022 Appeal Letter**

## V. Summary Judgment Standard

23.    Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-moving party to present specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).

24.    In evaluating a motion for summary judgment, all facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions—not those of a judge. *Anderson*, 477 U.S. at 255. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

## VI. Arguments

## A. Plaintiffs' wrongful foreclosure claim is cognizable as a damages claim for wrongful initiation of foreclosure proceedings.

25.     Defendants argue Plaintiffs cannot maintain a wrongful foreclosure claim because no foreclosure sale has occurred. While Texas courts do require a completed sale for a traditional wrongful foreclosure damages claim based on an inadequate sales price, that is not the only theory available. Plaintiffs here seek damages for Defendants' wrongful initiation and prosecution of foreclosure proceedings—a cause of action distinct from a post-sale wrongful foreclosure claim.

26.     Texas courts recognize that a lender's wrongful posting and initiation of foreclosure proceedings—where initiated in breach of the lender's own contractual obligations or applicable regulatory duties—may give rise to damages independent of whether a sale ultimately occurs. *See Pointe West Ctr., LLC v. It's Alive, Inc.*, 796 S.W.2d 830, 838–39 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *see also Motten v. Chase Home Fin.*, 821 F. Supp. 2d 988, 1008 (S.D. Tex. 2011) (recognizing that wrongful initiation of foreclosure proceedings can support a damages theory separate from a completed-sale claim). Defendants

wrongfully initiated foreclosure proceedings after denying Plaintiffs' loss mitigation applications through a process that was itself procedurally deficient and contrary to Defendants' own written representations.

27.     Alternatively, to the extent the Court concludes that a completed foreclosure sale is required for any wrongful foreclosure recovery, Plaintiffs respectfully request that this claim be preserved as a contingent damages claim in the event the TRO is dissolved and the foreclosure is permitted to proceed. The breach of contract, fraud, and statutory claims remain the primary recovery vehicles and are addressed below.

## B. Plaintiffs' breach of contract claim is not barred by the prior material breach doctrine because defendants' prior breach caused or contributed to plaintiffs' default.

28.     Defendants invoke the "prior material breach" doctrine to argue that because Plaintiffs defaulted on their loan, they cannot maintain a breach of contract claim. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). But Defendants' reliance on this doctrine ignores a critical exception: the prior material breach doctrine does not bar a plaintiff's contract claim where the defendant's own breach caused or contributed to the plaintiff's non-performance.

*See* Restatement (Second) of Contracts § 237 cmt. d (1981); *Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.,* 118 F. Supp. 2d 737, 744 (S.D. Tex. 2000).

29.    Defendants had independent and mandatory contractual obligations they breached before Plaintiffs' default became uncurable. The Deed of Trust executed by the parties is a standard FHA-insured mortgage instrument (HUD Form 3044). Section 9 of that Deed of Trust expressly requires SWBC and its servicer to comply with HUD's regulations and guidelines. Those regulations impose affirmative loss mitigation obligations. Specifically, 24 C.F.R. § 203.605 requires a servicer to "evaluate" a defaulted borrower for all available loss mitigation options before initiating foreclosure. HUD Mortgagee Letter 2021-18 (July 23, 2021) and ML 2020-06 further required servicers of FHA-insured loans to offer, in sequence, the COVID-19 Recovery Standalone Partial Claim and the COVID-19 Recovery Modification to eligible borrowers before proceeding to foreclosure. Defendants' failure to properly process Plaintiffs' applications in accordance with these mandatory regulatory requirements—including denying the Partial Claim before the appeal was resolved, in violation of their own written representations—constitutes an independent breach of the Deed of Trust that predates and contributed to Plaintiffs' inability to bring the loan current.

30.     Genuine disputes of material fact exist regarding whether Defendants' mishandling of the loss mitigation process caused or contributed to Plaintiffs' continued default. Cristancho Decl. ¶¶ 5–14; Melgar Decl. ¶¶ 5–11. Summary judgment on this claim must be denied.

## C. Plaintiffs' fraud claim is not barred by the statute of frauds or the economic loss doctrine.

31.     Defendants argue Plaintiffs' fraud claim is barred by: (1) the statute of frauds; and (2) the economic loss rule. Both arguments mischaracterize the claim.

32.     As to the statute of frauds: Defendants overread this doctrine. The statute of frauds bars enforcement of certain oral contracts, not fraud claims based on affirmative misrepresentations that induced detrimental reliance. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). Plaintiffs do not seek to enforce an oral loan modification agreement. They seek damages for two categories of specific, documentable misrepresentations. First, the written representation in SWBC's own February 14, 2022 letter—already in the record as Defendants' Exhibit A-3— stating that the Partial Claim offer would remain available "until resolution of the appeal." Plaintiffs relied on this representation and refrained from executing the Partial Claim documents during the appeal period. SWBC then denied the

Partial Claim before the appeal was resolved, without notice to Plaintiffs. *See* Defs.' Ex. A-5. Second, SWBC's affirmative oral representation to Plaintiffs that their submitted modification paperwork had been "misplaced in their system"— a statement made after approximately three months of unexplained delay— induced Plaintiffs to continue engaging in the process rather than pursuing other remedies. *See* Pet. ¶ 18; Cristancho Decl. ¶ 9.

33. As to the economic loss rule: the Texas Supreme Court has recognized that the rule does not apply where the defendant has a duty independent of any contractual obligation. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998). The common-law duty not to make affirmative misrepresentations of existing fact to induce another party's detrimental reliance exists independent of contract. Defendants' misrepresentation that the Partial Claim would remain available during appeal— set out in writing—and their misrepresentation that documents had merely been "misplaced" are affirmative tortious acts that imposed harm independent of any breach of the *Deed of Trust*. The economic loss rule does not bar this claim.

## D. Plaintiffs' TDCA claims are timely because they are based primarily on Defendants' post-2022 conduct.

34.     Defendants argue Plaintiffs' TDCA claims accrued between February 14 and March 8, 2022, and are therefore time-barred under the two-year limitations period. *See* Tex. Fin. Code § 392.403(b). This argument fails because Plaintiffs' TDCA claims are based primarily on Defendants' post-2022 conduct—all of which is timely.

35.     The following acts occurred within two years of Plaintiffs' March 28, 2024 filing date and independently support Plaintiffs' TDCA claims: (1) SWBC's April 2022 denial of Plaintiffs' appeal without providing the promised alternative relief; (2) SWBC's December 16, 2022 denial of Plaintiffs' second loan modification application, after a three-to-four-month delay and with a resubmission deadline that had already passed when Plaintiffs received the notice—*see* Defs.' Ex. A-7; and (3) the initiation of foreclosure proceedings in late 2023 and early 2024 through RASC's November 17, 2023 acceleration letter and *Notice of Substitute Trustee's Sale* setting a January 2, 2024 foreclosure date. *See* Pet. Ex. A-4. Each of these acts occurred within the limitations period and independently supports a TDCA claim.

36.     As to pre-2022 conduct, the discovery rule alternatively tolls limitations where the nature of the injury was inherently undiscoverable and

objectively verifiable. *See* S.V. v. R.V., 933 S.W.2d 1, 6 (Tex. 1996). Given Defendants' own representations that documents had merely been "misplaced" and modification options remained under review, Plaintiffs could not reasonably have discovered the full extent of the TDCA violations until later in the loss mitigation process.

37.     Defendants further argue loan modification communications are categorically outside the TDCA under *Miller v. BAC Home Loans Servicing, LP*, 726 F.3d 717 (5th Cir. 2013). But Miller's holding is narrow: it bars TDCA claims only where the alleged misrepresentations did not cause the borrower to think differently about "the character, extent, amount, or status" of the debt. *Id.* at 723. Here, SWBC's written representation that the Partial Claim offer would remain available during appeal directly affected Plaintiffs' understanding of the status of their debt and the options available to resolve it. When SWBC denied the Partial Claim before the appeal concluded, it misrepresented the extent and status of the loss mitigation options available—which is actionable under § 392.304(a)(8) (prohibiting misrepresentation of the character, extent, or amount of a debt) and § 392.304(a)(19) (prohibiting use of deceptive means to collect a debt). These are not mere customer service failures; they are affirmative misrepresentations about

available means of resolving the debt that induced Plaintiffs' reliance and altered their conduct.

## E. The tender requirement does not bar Plaintiffs' damages claims.

38.     As addressed in the Disputed Facts section above, the tender requirement applies only to claims for equitable relief—specifically, to enjoin or set aside a foreclosure sale. *See Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N Prop Invests.*, LLC, 481 S.W.3d 336, 349 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Plaintiffs' claims for statutory damages under the FDCPA and TDCA, actual damages for fraud, and contract damages are not subject to any tender requirement. The cases Defendants cite all arise in the equitable context of preventing or unwinding a foreclosure sale—not in the context of damages claims for past misconduct.

39.     Furthermore, even with respect to equitable claims, the tender requirement does not apply where a plaintiff's inability to tender is attributable to the defendant's own wrongful conduct. Here, Defendants' improper denial of the Partial Claim, failure to process the modification application within their own timelines, and refusal to cooperate with TXHAF directly caused Plaintiffs' inability to bring the loan current. Defendants cannot simultaneously obstruct

every path to resolution and then invoke the tender requirement as an absolute defense to all claims.

## VII. Conclusion

40.     For the foregoing reasons, Defendants' Motion should be denied in its entirety. Genuine disputes of material fact exist on each of Plaintiffs' claims — including whether Defendants' misrepresentations and procedural failures contributed to Plaintiffs' inability to cure their default, whether Defendants prematurely denied the Partial Claim while Plaintiffs' appeal remained pending, and whether Defendants' failure to respond to TXHAF foreclosed every avenue Plaintiffs pursued to resolve the mortgage deficiency. Defendants' legal defenses present equally contested questions: the prior material breach doctrine, the statute of frauds, the economic loss rule, the tender requirement, and the TDCA limitations argument each fail for the reasons set forth above.

## VIII. Prayer

41.     Plaintiffs respectfully request the Court deny *Defendants' Motion for Summary Judgment* in its entirety. In the alternative, should the Court determine that summary judgment is appropriate on any individual claim, Plaintiffs

respectfully request that the Court limit its ruling to that claim and permit all remaining claims to proceed to trial.

Respectfully submitted,

**SANCHEZ LAW FIRM**
13201 Northwest Freeway, Suite 300
Houston, Texas 77040
713-780-7745 (tel)
service@sanchezlawfirm.com

By:  *Benjamin K. Sanchez*
Benjamin K. Sanchez
USDC-SDTX No. 23410
State Bar No. 24006288

**Attorney for Plaintiffs,**
**Maurio Cristancho and**
**Idali Melgar**

# Certificate of Service

I hereby certify the foregoing document was served on Defendant's counsel via the Court's PACER E-Filing System on June 30, 2026, by */s/ Benjamin K. Sanchez.*